NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO,<br><br>                Petitioner,<br><br>  v.<br><br>BERNARD GOODWIN et al.,<br><br>                Respondents. | Civ. Action No. 07-5205 (KSH)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

Presently before the Court is a writ of habeas corpus filed by Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act ("SVPA"), seeking release from the custody of the Special Treatment Unit in Avenel, New Jersey.

Aruanno has been civilly committed as a sexually violent predator since 2004 following convictions for two separate sexual offenses. In 1994, he pleaded guilty to second-degree lewd conduct in Florida, and in 1999, a New Jersey state court jury found him guilty of second-degree sexual assault arising from an incident in 1996. As Aruanno was nearing the end of his sentence, the State filed a petition in New Jersey Superior Court seeking to commit him as a sexually violent predator under the SVPA. Although he had a right to a hearing on involuntary commitment within 20 days, Aruanno waived that right and agreed to have a later hearing. Partially due to his repeated applications to be appointed new counsel, a hearing on the State's petition was not held until the spring of 2005. Aruanno was detained until that time pursuant to a temporary commitment order. Following a three-day hearing, Judge Serena Perretti found that

expert testimony demonstrated "by clear and convincing evidence that Joseph Aruanno continues to be a sexually violent predator in need of involuntary civil commitment in a secure facility for control, care and treatment." (May 9, 2005 Commitment Order.)

Following appeals from Judge Perretti's order at the state level, Aruanno has filed over 28 civil cases in this Court and 27 appeals in the United States Court of Appeals for the Third Circuit. *See Aruanno v. Velez,* No. 12-0152, 2012 WL 1232415, at *1 (D.N.J. Apr. 12, 2012) (Martini, J.).

For the reasons that follow, Aruanno's petition is denied and no certificate of appealability shall issue.

## II. Facts and Procedural History

### A. Florida & New Jersey Convictions

In 1994, while in Florida, Aruanno exposed himself to two girls, age 13 and 14, as they were walking home from school and engaged in lewd conduct that included masturbating in their presence. *In re Civil Commitment of J.A.,* No. A-6499-04T2, 2007 WL 609284, at *1 (N.J. App. Div. Mar. 1, 2007), *cert. denied*, 192 N.J. 73 (2007). Aruanno pleaded guilty to second-degree lewd conduct and received a sentence of ten years probation. *Id.* Despite entering a guilty plea, Aruanno now asserts that he is not guilty of that offense and claims that it was a case of mistaken identity. (*See* Transcript of Civil Commitment, April 11, 2005, at 29:2–18, 66:7–14, appended to Answer to Amended Compl., Ex. H ("1T").) He claims that he took the plea bargain only because he believed he could face up to ten years in prison if he went to trial. (*Id.* 66:25-67:6.)

Aruanno's New Jersey offense occurred in 1996 when he approached an eight-year-old girl who was playing on her front porch, pushed her against the porch railing, put his hand down her pants, and grabbed her "vaginal area." *In re Civil Commitment of J.A.*, 2007 WL 609284 at

2

*1. The girl yelled and Aruanno fled. *Id.* Her mother called the police, who apprehended Aruanno in the neighborhood. *Id.* The girl identified him as the man who touched her. *Id.* A jury convicted him of second-degree sexual assault and he was sentenced to ten years imprisonment with five years of parole ineligibility. *Id.*

Aruanno maintains that he is not guilty of this offense as well, claiming that the victim had asserted, both at the time of his arrest and at his trial, that he was not her attacker. (1T 65:12–22.) He also claims that the entire jury admitted to finding him guilty before the trial started. (*Id.* 68:14–23.)

### B. Civil Commitment Proceedings

On April 16, 2004, the State filed a petition in New Jersey Superior Court seeking Aruanno's involuntary commitment under the SVPA, N.J.S.A. 30:4-27.24, *et seq.* On May 13, 2004, an order for temporary commitment was entered. (Transcript of Civil Commitment Trial & Decision, dated May 9, 2005, at 15:15–16, appended to Answer to Amended Compl., Ex. J ("3T").) Although Aruanno had a right to a hearing on involuntary commitment within 20 days, N.J.S.A. § 30:4-27.29, he waived that right and agreed to have a later hearing. (*Id.* 15:16–19.)

Over the following months, Aruanno's representation was in constant flux as a series of attorneys took up his representation and were replaced. On February 22, 2005, the court appointed Dawn SanFilippo to represent him, and although Aruanno repeatedly complained about her services, she remained his attorney through the end of his hearing before Judge Perretti, which took place on April 11, 2005, April 18, 2005, and May 9, 2005. (*Id.* 17:15-22.)

On the first day of the hearing, a Monday morning, immediately after counsel entered their appearances, Aruanno complained that he had not heard from his attorney despite his numerous attempts at communicating by letter and by phone. (1T 5:22–7:24.) He asserted that

3

he should have been consulted regarding how his attorney would respond to the report of the State's expert, Vivian Snaidman, who was due to testify that day. (*Id.* 8:10–18.) His attorney responded that she received the report the preceding Thursday and reviewed it over the weekend. (*Id.* 8:19–25.) The court cut short the exchange, instructing that the State should call its first witness and informing Aruanno that he would have the chance to speak for himself notwithstanding his representation by counsel. (*See id.* 9:22–13:2.)

Vivian Snaidman, a psychiatrist, was the state's only witness. In May 2004, Snaidman met with Aruanno for a clinical interview that lasted roughly 40 minutes. (*Id.* 16:4–8, 22:6–7.) At that interview, Aruanno refused to discuss his legal situation, although Snaidman testified that he "can be very talkative and so we did speak for quite some time." (*Id.* 18:17–25.) Her report was based on that interview as well as "the legal records from both his Florida conviction and his New Jersey conviction," mental health records from prison, and treatment records since his temporary civil confinement commenced. (*Id.* 16:10–15.)

Snaidman testified that Aruanno suffers from schizophrenia, which she described as a disorder that affects "all different areas of thinking," often leading to symptoms that include auditory hallucinations, a "loosening of associations" so that thoughts that might not make sense to a listener make sense to the speaker, pressured speech, and disregulation of affect. (*Id.* 19:25–20:25.) She further found that Aruanno fit the criteria for the subtype paranoid schizophrenia, and that such a condition can be treated only with medication. (*Id.* 22:20–24:11.)

When asked for an opinion regarding why Aruanno committed the sexual offenses, Snaidman stated that "his current presentation . . . is consistent with being internally preoccupied and having a thought disorder," and that the sexual behavior is "part of a generalized disinhibition of behavior." (*Id.* 24:19–25:13.) Snaidman would not rule out the possibility that

4

Aruanno also suffers from paraphilia, but she stated that in diagnosing mental illness, an Axis I diagnosis like schizophrenia "trumps everything else," and another disorder such as paraphilia might exist but cannot be diagnosed until the schizophrenia is addressed. (*Id.* 35:12–36:10.)

Counsel for the State asked Snaidman whether schizophrenia would predispose a person to sexual violence. (*Id.* 40:6–7.) She responded:

> In general, schizophrenia doesn't necessary predispose anybody to sexual violence and the literature suggests that there's no increase in violence with schizophrenia.
>
> But when you identify the specific schizophrenics who have committed previous acts of violence, their risk of future acts of violence is very high. So if he has previous acts of sexual violence, he has a risk, a high risk, of future acts of sexual violence if untreated.

(*Id.* 40:8–17.) She further stated that she believes that if left untreated, Aruanno would be a risk to himself and to others, but that he may be able to "participate fruitfully in sex offender treatment." (*Id.* 40:23–41:10.)

On cross-examination, Aruanno's attorney pressed Snaidman for further details regarding the definition of schizophrenia and paraphilia, and inquired as to how those analyses fit with Aruanno's conduct. (*Id.* 46:21–48:11.) She then inquired as to what type of medication would be required, what medication had been attempted in the past, and why Aruanno had resisted medication. (*Id.* 48:15–51:19.)

On re-direct, counsel for the State asked about the risks if Aruanno were not to receive treatment, and Snaidman responded that he would be a danger, as his schizophrenia and history of sexual violence make him more likely to be a repeat offender than a person in the general population. (*Id.* 58:2–59:6.)

5

Following Snaidman's testimony, Aruanno testified that he was not guilty of the underlying offenses and represented that through retained counsel he had obtained an order in federal court that ended his forced medication. (*Id.* 60:9–62:1, 65:12–68:25.) Further, he offered to give the court "ten different doctor reports that rule out paraphilia." (*Id.* 62:2–14.) Aruanno complained that his attorney had not met with him so that he could give her the information on these doctors. Judge Perretti responded that she would be willing to hear from any of them. (*Id.* 62:19–23.) Aruanno also complained that Dr. Snaidman did not meet with him long enough to understand his condition. (*Id.* 63:13–64:20.)

Following Aruanno's testimony, the court inquired about further testimony from two witnesses previously identified -- a Dr. Carlson for the State and a Dr. Greenfield for Aruanno. (*Id.* 70:11–23.) After learning that Aruanno had refused to meet with Carlson, Judge Perretti ruled that Aruanno would not be permitted to call Greenfield if he did not first interview with Carlson. (*Id.* 70:18–71:11, 72:14–19.)

The hearing continued on April 18, 2005 for what was essentially a brief scheduling conference. (*See generally* Transcript of Civil Commitment Trial, April 18, 2005, appended to Answer to Amended Compl., Ex. I ("2T").)

The hearing resumed on May 9, 2005. (*See* 3T.) The State informed the court that Carlson had still not met with Aruanno and therefore could not render any diagnosis. (*Id.* 3:11–17.) Aruanno's attorney informed the court that although Greenfield had interviewed Aruanno he could not render an opinion with a reasonable degree of clinical certainty and thus would not be testifying. (*Id.* 3:22–4:1.) After closing statements and some brief additional testimony from Aruanno, Judge Perretti rendered a decision from the bench.

She found Snaidman's testimony persuasive, describing in detail the diagnosis she gave of paranoid schizophrenia; her reasons for not diagnosing Aruanno with paraphilia; the effect that medication could have on his mental illness; and the danger that he might present as a result of his sexually violent behavior. (*Id.* 23:23–29:8, 29:20–31:20.) Based on that testimony, Judge Perretti held that the State had demonstrated by clear and convincing evidence "that the respondent is a sexually violent predator suffering from an abnormal mental condition that adversely influences his emotion[al], volitional, and cognitive capacity in such a way as to predispose him to commit sexually violent acts." (*Id.* 31:8–15.) The court further found that his "substantial, significant, severe difficulty controlling his sexually violent behavior" means that "he is highly likely to commit a sexually violent crime if not committed for care and custody." (*Id.* 31:16–20.) The court's order concluded that "Joseph Aruanno continues to be a sexually violent predator in need of involuntary civil commitment in a secure facility for control, care and treatment." (Judgment & Order for Temporary Civil Commitment Pursuant to N.J.S.A. 30:4-27.24, *et seq.*, dated May 9, 2005, appended to Answer to Amended Compl., Ex. K.)

Aruanno appealed through a new attorney, Joan Van Pelt, a Deputy Public Advocate, raising two arguments: (1) that he received ineffective assistance of counsel at the commitment hearing; and (2) that a diagnosis of schizophrenia, without more, does not suffice to establish a mental illness inhibiting volitional control and making it likely that Aruanno would commit a sexually violent offense if released. *In re Civil Commitment of J.A.*, 2007 WL 609284 at *1. In a supplemental *pro se* brief, Aruanno argued: (1) that he was subject to civil commitment in retaliation for filing litigation against the State; (2) that he does not fit the definition of a sexually violent predator; (3) that the State relied on "hearsay and fabricated evidence"; (4) that "the actions of the attorney who was assigned to [his] case were not only incompetent and ineffective

7

but criminal"; and (5) that the Court should consider "issues such as *ex post facto*, double jeopardy," and the right to "trial by jury." *Id.* In an unpublished, per curiam decision, the Appellate Division rejected Aruanno's arguments and affirmed. *See id.* at *7-8.

On June 19, 2007, the New Jersey Supreme Court denied a petition for certification. *In re Civil Commitment of J.A.*, 192 N.J. 73 (2007).

### C. Aruanno's Habeas Petition

On October 26, 2007, Aruanno initiated the present action by filing a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [D.E. 1.] On November 5, 2007, the Court dismissed his petition without prejudice because he failed to specify the grounds on which he sought relief; and denied his request for appointment of counsel. [D.E. 2 & 3.] On March 26, 2008, the Court denied a motion for reconsideration. [D.E. 6.] Aruanno responded with a letter indicating that he intended the motion for reconsideration to be construed as an amended habeas petition. [D.E. 7.] The Court denied this request, noting that even if the motion for reconsideration were construed as an amended petition, it still failed to specify the grounds on which he sought relief. [D.E. 10.]

Aruanno filed a notice of appeal. [D.E. 13.] On June 4, 2009, the Third Circuit granted a certificate of appealability, noting that "jurists of reason would debate the correctness of the District Court's denial of Appellant's request for reconsideration in which he expressed his intent to stand on the claims set forth in the state court appellate briefs as his habeas petition filed under 28 U.S.C. § 2254." [D.E. 18.] The panel held: that on remand, the Court should treat Aruanno's motion for reconsideration as an amended petition; that the District Court may provide Aruanno a form of § 2254 petition to list his constitutional claims; the Court should allow Aruanno to

recast "the claims and supporting facts contained in his state court appellate brief . . ."; and that his motion for appointment of counsel is granted. [*Id.*]

On July 15, 2009, the Court appointed the Office of the Public Defender for the District of New Jersey to represent Aruanno and directed that an amended petition be filed on his behalf within 45 days. [D.E. 20.] A conflict arose between Aruanno and Assistant Federal Public Defender Donald J. McCauley. [D.E. 23–25.] On September 11, 2009, noting "Aruanno's demonstrated capacity to represent himself" in his *pro se* written submissions to the Court, the Court vacated its appointment of counsel; directed Aruanno to file an amended petition within 30 days; and held that if he failed to file an amended petition, the Court would treat his motion for reconsideration as a final amended petition. [D.E. 26.]

In a letter postmarked October 26, 2009, Aruanno requested that this Court recuse itself on gender grounds. [D.E. 32.] He reiterated this request in letters postmarked December 4, 2009 [D.E. 36] and January 19, 2010 [D.E. 38]. The Court denied these applications as being based on impermissible grounds and lacking legal merit. [D.E. 57.]

On November 5, 2009, Mark A. Berman, Esq. entered a notice of appearance as retained counsel for Aruanno. [D.E. 34.] He has filed a timely amended petition for a writ of habeas corpus, to which the State filed opposition. [D.E. 35, 37, 44.] Both Berman and Aruanno filed subsequent briefs in support of the petition. [D.E. 48, 50.]

## III. Standard of Review

When a person in custody pursuant to a state court judgment seeks federal habeas relief, a district court's inquiry is limited. The Antiterrorism and Effective Death Penalty Act ("AEDPA") permits review only to determine whether the person "is in custody in violation of

9

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, an application for a writ of habeas corpus may be granted only in two narrow circumstances:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)); *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir.), *cert. denied*, 132 S. Ct. 533 (2011). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003); *Rountree*, 640 F.3d at 537. "Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ." *Rountree*, 640 F.3d at 537 (quoting *Andrade*, 538 U.S. at 75). In essence, a federal habeas court "must ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of"

the Supreme Court. *Wetzel v. Lambert*, -- U.S. --, 132 S. Ct. 1195, 1198 (2012) (quoting *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 786 (2011)).

A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Rountree*, 640 F.3d at 537.

State court proceedings are entitled to a presumption of factual correctness, and the petitioner bears the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a state court analyzed but rejected the petitioner's federal claims but did not discuss how it reached that decision, "then the deferential standard of review from § 2254 still applies." *Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012) (citing *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002), *cert. denied*, 358 U.S. 1000 (2003)). But "if the state court did not reach the merits of the federal claims, then they are reviewed *de novo*." *Id.* (citing *Cone v. Bell*, 556 U.S. 449 (2009)).

## IV. Discussion and Analysis

Aruanno's amended petition raises seven grounds for relief: (1) violation of the double jeopardy clause under the Fifth and Fourteenth Amendments to the United States Constitution; (2) violation of the *ex post facto* clause of the United States Constitution; (3) violation of the right to a jury trial under the Fifth and Fourteenth Amendments to the United States Constitution; (4) violation of the due process clause of the Fourteenth Amendment to the United States Constitution because of the SVPA's requirement that the State need only demonstrate clear and convincing evidence, and not proof beyond a reasonable doubt, to obtain an order for involuntary commitment; (5) violation of the right to effective assistance of counsel under the Sixth and

11

Fourteenth Amendments to the United States Constitution because Aruanno was denied the right to proceed *pro se* at his commitment hearing; (6) violation of the right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution because his trial counsel failed to consult with him and to obtain expert witnesses to testify on his behalf; and (7) violation of the due process clause of the Fourteenth Amendment to the United States Constitution because the State failed to carry its burden of proof. Aruanno's supplemental *pro se* letter brief discusses the same legal issues and also puts forth several factual arguments, including: that the trial judge was biased against him; that Snaidman's testimony was dishonest; that his trial counsel failed to seek out doctors to testify on his behalf; that he is not guilty of the crimes underlying his criminal conviction; and that his civil commitment must be considered punitive in nature because of the harsh conditions of his confinement.

### A. Exhaustion

Under AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The State argues that Aruanno is barred from raising the first five arguments in the amended petition because he did not include them in his petition for certification to the New Jersey Supreme Court. (State's Br. 6.) However, the remand order from the Third Circuit sets the scope of Aruanno's amended petition, and it permits him to recast "the claims and supporting facts contained in his state court appellate brief . . ." [D.E. 19.] Seen through this lens, this Court is satisfied that Aruanno's amended petition and the briefs filed by, and on behalf of, Aruanno, satisfied AEDPA's exhaustion requirements. The Court notes too that notwithstanding having raised exhaustion, the state addressed all the claims in its opposing papers.

### B. Double Jeopardy

Aruanno argues that his civil commitment violates the double jeopardy clause, which prevents multiple or successive prosecutions for the "same offence." U.S. Const. amend. V. The Supreme Court has held that so long as they are civil in nature, commitment proceedings do "not constitute a second prosecution" even if they can result in a successive period of confinement. *Kansas v. Hendricks*, 521 U.S. 346, 369–70 (1997). Therefore, the Court must determine whether the SVPA is punitive in nature and therefore criminal rather than civil, which Aruanno's arguments do not establish.

In *Aruanno v. Hayman*, 384 F. App'x 144, 148-49 (3d Cir.), *cert. denied*, 131 S. Ct. 835 (2010), Aruanno brought a number of "constitutional claims [that] turn[ed] on whether the SVPA's commitment hearing process is truly civil and regulatory in nature, or whether it was actually a criminal proceeding masquerading as civil commitment." In establishing that Aruanno's civil commitment under the SVPA serves a regulatory civil function that does not violate constitutional guarantees of due process, the Circuit court reasoned:

> Like the [Kansas SVPA ("K-SVPA")], the SVPA is not part of New Jersey's criminal code, and the language of the statute describes its procedure as a civil commitment process which recognizes "the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." N.J.S.A. § 30:4-27.25(c). Although this label is not entirely dispositive, it places the burden on Aruanno to provide "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Hendricks,* 521 U.S. at 361 (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980)) (alterations and internal quotations omitted).

> Aruanno cannot meet this burden. Although facilities housing committed sex offenders are managed by the Department of Corrections, the SVPA requires that offenders subject to civil commitment be housed separately from offenders under the general supervision of the Department of Corrections. N.J.S.A. §

13

> 30:4-27.34(a). The SVPA also requires that the Department of Human Services provide treatment that is "appropriately tailored to address the specific needs of sexually violent predators." N.J.S.A. § 30:4-27.34(b).
>
> Finally, like the K-SVPA, the SVPA provides for reevaluation of involuntarily committed persons every year. N.J.S.A. § 30:4-27.35. Committees may also be authorized by members of the treatment staff to file a petition for discharge from involuntary commitment. N.J.S.A. § 30:4-27.36.
>
> Under the framework established in *Hendricks,* we hold that the New Jersey SVPA serves an essentially regulatory civil function. . . .

*Id.* at 149-150.

Consequently, the civil nature of Aruanno's commitment proceeding before Judge Perretti has been ruled on in this Circuit. *Id.*

For the reasons discussed above, the Court joins the many federal and state court decisions, aside from *Aruanno v. Hayman,* that have found New Jersey's SVPA to be civil in nature. Because Aruanno's present confinement arises from a civil proceeding, and not from a criminal prosecution, his rights under the double jeopardy clause do not attach, and his petition on this ground is denied.

### C. *Ex Post Facto*

Aruanno argues that his civil commitment violates the *ex post facto* clause. The *ex post facto* clause "applies to a statute or policy change which 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" *Richardson v. Penn. Bd. of Probation & Parole*, 423 F.3d 282, 287 (3d Cir. 2005) (quoting *Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n. 3 (1995)); U.S. Const. art. I, § 10. The Supreme Court has held that the *ex post facto* clause applies only to penal statutes. *See Hendricks*, 521 U.S. at 370–71; *see also E.B. v.*

*Verniero*, 119 F.3d 1077, 1092 (3d Cir.), *reh'g en banc denied*, 127 F.3d 298 (3d Cir. 1997), *cert. denied*, 522 U.S. 1109 (1998).

For the reasons explained above, the SVPA is civil and not punitive in nature. Therefore, Aruanno's confinement under the SVPA does not violate the *ex post facto* clause, and his petition on this ground is denied.

### D. Right to Jury Trial

Aruanno argues that he was entitled to a trial by jury because the result of the proceeding was involuntary confinement. But, as the Third Circuit held in *Aruanno v. Hayman, supra,* the SVPA "serves a regulatory — rather than penal — purpose, because it seeks to protect the public from possible future harm rather than to punish for criminal acts committed in the past," and "the Constitution does not demand a jury trial be provided before an individual is involuntarily committed by the state as a sexually dangerous person." 384 F. App'x at 151–52 (citing *United States v. Carta*, 592 F.3d 34, 43 (1st Cir. 2010); *Poole v. Goodno*, 335 F.3d 705, 710–11 (8th Cir. 2003); *United States v. Sahhar*, 917 F.2d 1197, 1205–07 (9th Cir. 1990)).

### E. Burden of Proof

Aruanno argues that his right to due process has been violated because he has been subject to incarceration on a standard of proof less than "beyond a reasonable doubt." As established above, however, the SVPA is civil, and not punitive, in nature. In addition, Aruanno is aware that the Third Circuit found this argument to be "flatly inconsistent with Supreme Court precedent governing traditional civil commitment statutes, which holds that a State need only prove the dangerousness of a potential committee by clear and convincing evidence." *Hayman,* 384 F. App'x at 151 (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992); *Addington v. Texas*, 441 U.S. 418, 433 (1979)).

Therefore, the trial court's use of the clear and convincing evidence standard, which is directly prescribed by New Jersey law, N.J.S.A. 30:4-27.32(a), did not violate Aruanno's constitutional rights, and his petition on this ground is denied.

### F. Right to Proceed *Pro Se*

Aruanno argues that at his SVPA hearing, he was "compelled against his will to be represented by counsel." Aruanno's assertion that he had a right to proceed *pro se* at his SVPA hearing is without merit.

The SVPA requires that people subject to civil commitment proceedings must be represented by counsel at their hearings. *See* N.J.S.A. 30:4-27.29(c). Such a requirement is practical in light of the fact that an SVPA hearing takes place only after a court has found "probable cause to believe that the person is a sexually violent predator in need of involuntary commitment." N.J.S.A. 30:4-27.28(g). In order to qualify as a sexually violent predator, a person must "suffer[] from a mental abnormality or personality disorder." N.J.S.A. 30:4-27.26. Thus, with a court having found probable cause that a person may suffer from such an abnormality or disorder, assignment of counsel is a reasonable protection to provide for those who might face civil commitment. Moreover, as repeated above, SVPA proceedings are civil in nature. Although a party has a right to represent himself in a criminal trial, *see Faretta v. California*, 422 U.S. 806, 835–36 (1975); *Brathwaite v. Phelps*, 418 F. App'x 142, 146 (3d Cir.), *cert. denied*, 131 S. Ct. 3038 (2011), Aruanno fails to point to any authority supporting his assertion that he had a right to represent himself in his civil commitment proceeding. Therefore, the trial court's decision to appoint counsel and permit Aruanno to proceed in a hybrid-like fashion is not contrary to, nor does it involve an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Indeed, Judge Perretti was eminently practical in how she addressed Aruanno's concerns. His petition on this ground is denied.

### G. Ineffective Assistance of Counsel

In order to demonstrate a deprivation of the right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must show that: "(1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." *Ross v. Dist. Attorney of Cnty. of Allegheny*, 672 F.3d 198, 209–10 (3d Cir. 2012). To satisfy the first prong, a petitioner must establish that counsel committed errors "so serious that [she/he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To satisfy the second prong, the errors must have so prejudiced the client's case that the result effectively becomes unreliable. *Id.* If the petitioner cannot establish both prongs, then "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process." *Id.*

Aruanno's argument is essentially that his trial counsel failed to prepare for the SVPA hearing because she did not meet with him until the morning of the hearing and did not obtain an expert witness to testify on his behalf.

Aruanno's argument fails both prongs of *Strickland*. A review of the record shows that his trial counsel received Snaidman's expert report four days in advance of the hearing and ably cross-examined Snaidman on her conclusions. Counsel delved into details regarding Snaidman's theories on how Aruanno could be treated (1T 48:19–49:15); pointed out that Snaidman failed to fully study Aruanno's medical history (*Id.* 49:16–50:17); emphasized a statement from Snaidman's direct testimony in which she indicated that medication might help rule out the risk that Aruanno suffers from paraphilia (*Id.* 51:20–52:5); and pursued a line of questioning

17

regarding the depth of Snaidman's direct interactions with Aruanno (*Id.* 52:6–54:4). Counsel's cross-examination indicated familiarity with Snaidman's report and she drew the attention of the court to certain shortcomings in it. Along with his attorney's competent representation, the Court notes that after Aruanno asked Judge Perretti to have expert witnesses appear on his behalf, the court extended him the opportunity to find one before she made her decision. (*Id.* 72–73.) Aruanno's attorney attempted to get a contemporaneous expert opinion establishing that Aruanno was not a threat, which was unsuccessful, not due to counsel but because the expert was unable to form a conclusion. Indeed, when the court reconvened the hearing 28 days later, Aruanno's counsel reported that Aruanno had interviewed with a potential expert but that this expert would not be testifying because he could not render an opinion to a reasonable degree of clinical certainty. (3T 3:18–4:1.)

Aruanno attempts to bolster his claim by pointing to records that pre-date the commitment hearing. But, as the Appellate Division noted, medical reports finding Aruanno not to be a threat were outdated. *See In re Civil Commitment of J.A.*, 2007 WL 609284, at *7 (describing report as "seven-and-one-half years old by the time of the commitment hearing" and not "competent evidence of [his] 'present condition' at the relevant time"). For the same reason, Aruanno's claim of ineffective assistance is not supported by a 2001 psychological evaluation performed by a doctor at the Department of Corrections who concluded that as an inmate, Aruanno did not "present as a danger to others," "does not present as an aggressive predator," and "does not present as hostile or openly resentful." (Aruanno Br. 10–11.) Aruanno's attorney's strategic choice not to use these reports – assuming they were even admissible – does not fall outside "the range of professionally reasonable judgments." *See Strickland*, 466 U.S. at 699.

Notwithstanding Aruanno's dissatisfaction, he has failed to establish that the Appellate Division's conclusion that trial counsel's performance was effective within the meaning of the Sixth Amendment is contrary to, or involves an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Aruanno has failed to establish that he suffered a deprivation of the right to effective counsel, and his petition on that ground is denied.

### H. Insufficiency of Evidence

Aruanno last argues that he was deprived of his right to due process because the trial court erroneously granted the order of civil commitment even though the State had not carried its burden of showing by clear and convincing evidence that he "has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he . . . will not control his . . . sexually violent behavior and will reoffend," *In re Commitment of W.Z.*, 173 N.J. 109, 132 (2002); N.J.S.A. 30:4-27.32(a). This argument is largely predicated on the fact that Snaidman testified that she could only diagnose Aruanno with schizophrenia, that she further testified that schizophrenia does not necessarily make a person likely to engage in sexual violence, and that she therefore rendered her opinion "upon her general view that individuals who have previously committed acts of sexual violence are at a high risk of future sexual violence." (Aruanno Br. 13 (citing 1T 40:8–11, 58).)

A review of Snaidman's testimony, however, reveals that her analysis was not as simplistic as Aruanno suggests. As recounted in more detail above, Snaidman began with a detailed recitation of how she came to conclude that Aruanno suffers from schizophrenia and what that diagnosis means. (1T 16–35.) Of particular note, Snaidman discussed her opinion that Aruanno's sexual offenses were "part of a generalized disinhibition of behavior," which occurs

"very frequently in psychotic patients." (*Id.* 24:19–25:13.) Thus, although Snaidman testified that "[i]n general, schizophrenia doesn't necessarily predispose anybody to sexual violence," she further explained that "when you identify the specific schizophrenics who have committed previous acts of violence, their risk of future acts of violence is very high. So if he has previous acts of sexual violence, he has a risk, a high risk, of future acts of sexual violence if untreated." (*Id.* 40:6–17.)

Snaidman diagnosed Aruanno with schizophrenia, explained her opinion as to how his condition contributed to his behavior and how the symptoms of schizophrenia would likely continue to play a role in making Aruanno dangerous. The trial court's decision indicates that Judge Perretti understood and accepted this testimony. (*See* 3T 27:8–29:8.) Accordingly, the record amply supports the court's determination that the State carried its burden of demonstrating by clear and convincing evidence that Aruanno met the SVPA's definition of a sexually violent predator, and Aruanno's petition on this ground is denied.

## V. Conclusion

For the foregoing reasons, each of Aruanno's claims for relief fails, and his petition for a writ of habeas corpus is therefore denied. No certificate of appealability shall issue because Aruanno has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall be entered.

Date: July 22, 2013

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.